UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



---

Dresser-Rand Company and Dresser-Rand Group Inc.,

                Plaintiffs,

–v–

Ingersoll Rand Company and Ingersoll Rand Company Limited,

                Defendants.

18-CV-3225 (AJN)

OPINION & ORDER

---

ALISON J. NATHAN, District Judge:

Dresser-Rand Company and Dresser-Rand Group Inc. ("Dresser-Rand" or "Plaintiffs") bring this diversity breach of contract, anticipatory breach of contract, and Declaratory Judgment Act action against Defendants Ingersoll Rand Company and Ingersoll Rand Company Limited ("Ingersoll Rand" or "Defendants"). Now before the Court is Ingersoll Rand's motion to dismiss Dresser-Rand's amended complaint for failure to state a claim. Dkt. No. 14.

For the reasons below stated, Ingersoll Rand's motion is DENIED.

**I.      Background**

For the purpose of evaluating this motion to dismiss, all plausible allegations in the amended complaint are accepted as true, and all reasonable inferences are drawn in Plaintiffs' favor. *See Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007). In addition, the Court may consider written agreements of which the plaintiff had notice and that were integral to the claim, even when the plaintiff fails to attach such agreement as an exhibit or incorporate it by reference to the complaint. *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d

42, 48 (2d Cir. 1997). In this case, it is undisputed that the three agreements between the parties warrant this treatment.

## A. Factual Background

Dresser-Rand brings breach of contract, anticipatory breach of contract, and Declaratory Judgment Act claims arising out of Ingersoll Rand's alleged defense and indemnification obligations with respect to workers' compensation Asbestos Liabilities. First Am. Compl., Dkt. No. 11 ¶¶ 40–53.

### 1. Formation of Dresser-Rand

Dresser-Rand Company is a general partnership formed in 1987 by Ingersoll Rand Corporation and Dresser Industries, Inc. *Id.* ¶ 2. In 2000, Ingersoll Rand became the sole equity holder of Dresser-Rand Company. *Id.* ¶ 15. On August 25, 2004, Ingersoll Rand Company Limited entered into an Equity Purchase Agreement with First Reserve Corporation whereby First Reserve Corporation purchased all equity interests in Dresser-Rand Company. *Id.* ¶ 16.

### 2. The Agreements and Ingersoll Rand's Alleged Defense and Indemnification Obligations[1]

Dresser-Rand alleges two separate sources of Ingersoll Rand's obligations to it: a 1986 Organization Agreement and a 2004 Equity Purchase Agreement. In addition, with its motion Ingersoll Rand introduced a third agreement involving the parties, the 2004 "ACE" or "Assumption" Agreement. The 1986 and 2004 Agreements are appropriately considered on this motion to dismiss because the amended complaint incorporates them by reference. *See* First Am. Compl. ¶¶ 2–3; *Cortec*, 949 F.2d at 47. The ACE Agreement is not attached to or incorporated by reference in the amended complaint, but Defendants contend that its consideration at this

---

[1] Although each relevant obligation is "to defend, indemnify, and hold harmless" the obligee, the Court uses the terms "defense and indemnity" or "indemnity" obligations for ease of reference.

2

juncture is appropriate because Plaintiff had notice of the document and the document was "integral" to Plaintiffs' claim. Dkt. No. 14-1 at 2 n.2 (citing *Cortec*, 949 F.2d at 44). As Plaintiffs clearly had notice of the ACE Agreement and do not object to its characterization as integral—going so far as to concede that the three agreements "operate in tandem," *see* Opp. at 11–13—the Court assumes without deciding that this characterization is correct.

Turning to the contents of these documents, first, in relevant part, the December 31, 1986 Organization Agreement requires Ingersoll Rand to defend, indemnify, and hold Dresser-Rand harmless for any claims, losses, or lawsuits (a) arising before Dresser-Rand's formation or (b) arising from any Ingersoll Rand products or operations, and from any claims against Dresser-Rand as successor to Ingersoll Rand. First Am. Compl. ¶¶ 2; 17–18.

Second, in relevant part, the August 25, 2004 Equity Purchase Agreement requires Ingersoll Rand to defend, indemnify, and hold Dresser-Rand harmless from all Asbestos Liabilities arising prior to the closing date of October 31, 2004. *Id.* ¶ 2. This Equity Purchase Agreement defines Asbestos Liabilities as any claim or proceeding against Dresser-Rand arising from the sale or use of an asbestos-containing product or for personal injuries caused by the presence of asbestos-containing material in any form or condition at any location at which Dresser-Rand or their predecessors operated or disposed of such materials. *Id.* ¶ 3.

Third, in conjunction with the sale of Dresser-Rand Company equity to First Reserve Corporation, Dresser-Rand, Ingersoll Rand, and ACE American Insurance Company ("ACE") entered into an additional agreement, the ACE Agreement. Mot. at 4; Opp. at 4. The contents and import of this document are addressed below.

### 3. Attempts to Secure Indemnification

Plaintiffs made allegedly timely demands upon Defendants to defend, indemnify, and hold them harmless from five separate workers' compensation Asbestos Liabilities arising out of alleged exposures by five former Dresser-Rand employees. First Am. Compl. ¶¶ 20, 23. Specifically, pursuant to the Equity Purchase Agreement's notice provisions, on May 13, 2014, Dresser-Rand placed Ingersoll Rand on notice via letter of its demand for defense, indemnification, and to be held harmless from the asbestos litigation arising from three claims, and set forth the details of each claim. *Id.* ¶ 23. These claims concern three former Dresser-Rand employees: (1) an employee last employed by Dresser-Rand in May 2004, who alleges asbestos exposure during his employment with Dresser-Rand at some point prior to 2001; (2) an employee last employed by Dresser-Rand in August 2001, who alleges asbestos exposure during his employment with Dresser-Rand at some point prior to 2001; and (3) an employee last employed by Dresser-Rand in 2008, who alleges asbestos exposure during his employment with Dresser-Rand between 1987 and 2003. *Id.* ¶¶ 24–26. After Ingersoll Rand allegedly ignored this original tender, Dresser-Rand issued a supplemental tender on January 13, 2015. *Id.* ¶ 27.

In 2017, Ingersoll Rand notified Dresser-Rand about two further claims. On January 19, 2017, Ingersoll Rand attempted to tender to Dresser-Rand Asbestos Liability arising from a different employee's workers' compensation claim alleged to have occurred between 1987 and 1992 while working for Dresser-Rand and 1993 and 1999 while working for Ingersoll Dresser Pump Company. *Id.* ¶¶ 29–30. On October 24, 2017, Ingersoll Rand placed Dresser-Rand on notice of a fifth claim. *Id.* ¶ 31. In January 2017 and March 2018, respectively, Dresser Rand counter-tendered each of the 2017 claims back to Ingersoll-Rand, but Ingersoll responded that it would not accept such tender. *Id.* ¶¶ 29, 32–33.

## B. Procedural Background

On April 13, 2018, Dresser-Rand filed its complaint. Dkt. No. 1. After the Court ordered Dresser-Rand to allege the citizenship of each of its partners, Dresser-Rand filed an amended complaint on May 7, 2018. Dkt. No. 11. On July 9, 2018, Ingersoll Rand moved to dismiss the amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Dkt. No. 14. That motion was fully briefed as of August 6, 2018. Dkt. Nos. 18, 21.

## II. Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), the plaintiff must plead sufficient factual allegations to "state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To meet this burden, the plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Conclusory statements that the defendant is liable for the plaintiff's claims are not sufficient, and the court need not accept the truth of "a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555.

When deciding a motion to dismiss under Rule 12(b)(6), a court may consider, in addition to the allegations in the complaint, "documents attached to the complaint as an exhibit or incorporated in it by reference, matters of which judicial notice may be taken, or documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quotation omitted).

## III. Analysis

Ingersoll Rand moves to dismiss Dresser-Rand's amended complaint on the grounds that the third agreement entered by the parties, the 2004 ACE Agreement, superseded the earlier agreements and resolves the claims advanced in Dresser-Rand's amended complaint.

5

## A. The ACE Agreement

Defendant's motion to dismiss points out that the parties entered a third agreement, which Defendant contends disposes of the claims at issue here. As explained above, Plaintiff does not contest that this document was in its possession and/or a document of which it had knowledge, and therefore that its contents are appropriately before the Court on this motion to dismiss.

This agreement, the "ACE" or "Assumption" Agreement, was entered into by Dresser Rand Group Inc., Ingersoll Rand Company, Ltd., and ACE American Insurance Company. Dkt. No. 14-4 at 1. The ACE Agreement begins with recitals according to which, "pursuant to" the Equity Purchase Agreement, Ingersoll agreed to "convey, transfer, and assign" and Dresser-Rand to assume "the Worker's Compensation, Auto Liabilities and General Liabilities, excluding Product Liabilities (as defined in the Purchase Agreement)" for Ingersoll-Rand's "Dresser-Rand business unit." *Id.* at 1. The recitals to the agreement further state that ACE Insurance had issued certain workers' compensation, automobile, general and products liability insurance policies to Ingersoll Rand, "which also included coverage" for the same business unit. *Id.* at 1.

Among other things, the ACE Agreement provided for Dresser-Rand to "accept[ ] and assume[ ] from [Ingersoll Rand] . . . any and all duties, obligations and liabilities, whether existing, accruing or arising before, on or after the effective date of October 29, 2004, to [ACE Insurance] under the Policies and Program Agreements pertaining to [Ingersoll Rand's Dresser-Rand business unit] (excluding Product Liability)." *Id.* at 2. As a result of this assumption, Dresser-Rand was entitled to receive all insurance benefits relating to Ingersoll Rand's Dresser-Rand business unit. *See id.* at 6.

According to Dresser-Rand, this agreement served only to transfer insurance policy obligations to ACE from Ingersoll Rand to Dresser-Rand. Dkt. No. 18, Opp. at 4–5, 8. It did not

6

transfer defense or indemnification obligations for Asbestos Liabilities like those at issue in Plaintiff's amended complaint. *Id.* According to Ingersoll Rand, however, Dresser-Rand assumption of all duties, obligations, and liabilities relating to the insurance policies and related agreements covering Ingersoll Rand's Dresser-Rand business unit *included* the workers' compensation indemnification and defense obligations at issue here. Dkt. No. 14-1, Mot. at 11–14.

Whose interpretation is correct depends upon the scope of the ACE Agreement, including whether in relevant part it supersedes the Equity Purchase Agreement. If so, it disposes of the claims at issue here.

### B. As a Matter of Law, the ACE Agreement Does Not Unambiguously Supersede the Equity Purchase Agreement

Ingersoll Rand contends that the ACE Agreement supersedes the relevant portions of the Equity Purchase Agreement. Because the separate provisions of the Organization Agreement are not relevant to the Court's disposition of these issues, the Court examines only the agreements on which Ingersoll Rand focuses.

Under New York contract law, "a subsequent contract regarding the same subject matter supersedes the prior contract." *CreditSights, Inc. v. Ciasullo*, No. 05-CV-9345 (DAB), 2007 WL 943352, at *6 (S.D.N.Y. Mar. 29, 2007) (quoting *Independent Energy Corp. v. Trigen Energy Corp.*, 944 F.Supp. 1184, 1195–96 (S.D.N.Y. 1996)). But a later contract that does not pertain to "precisely the same subject matter" as the earlier contract will not supersede the earlier contract "unless the subsequent contract has definitive language indicating it revokes, cancels, or supersedes that specific prior contract." *Id.* (citing *Globe Food Services Corp. v. Consolidated Edison Co. of N.Y., Inc.*, 184 A.D.2d 278, 279 (N.Y. App. Div. 1992)).

To determine whether "a particular provision is superseded by a provision in a subsequent contract, the Court considers (1) 'whether there is an integration and merger clause that explicitly indicates that the prior provision is superseded'; (2) 'whether the two provisions have the same general purpose or address the same general rights'; and (3) 'whether the two provisions can coexist or work in tandem.'" *A & E Television Networks, LLC v. Pivot Point Entm't, LLC*, No. 10-CV-9422 (AJN), 2013 WL 1245453, at *11 (S.D.N.Y. Mar. 27, 2013) (quoting *Medtech Prods. Inc. v. Ranir, LLC*, 596 F. Supp. 3d 778, 809 (S.D.N.Y. 2008)). Ingersoll Rand argues that each of these considerations demonstrates that the ACE Agreement superseded the Equity Purchase Agreement and Organization Agreement. It is incorrect.

### 1. The ACE Agreement Lacks an Integration or Merger Clause

For a contract's integration or merger clause to indicate that it supersedes an earlier contract, the clause must "explicitly indicate[ ]" that the prior agreement is superseded or merged into the later. *A & E Television*, 2013 WL 1245453, at *11 (quoting *Medtech Prods.*, 596 F. Supp. 3d at 809); *see also March v. Cabrini Med. Ctr.*, No. 08-CV-5405, 2009 WL 1726331, at *3 (S.D.N.Y. Apr. 6, 2009) (Sullivan, J.); *Dewitt Stern Grp., Inc. v. Eisenberg*, 257 F. Supp. 3d 542, 581–82 (S.D.N.Y. 2017). Even the provision that a contract "shall replace all prior agreements" is not "sufficiently definitive to supersede a particular earlier contract." *Id.* (quoting in part *Globe Food Servs. Corp.*, 184 A.D.2d at 279).

Here, it is undisputed that the ACE Agreement lacks an integration or merger clause, just as it is undisputed that despite the absence of such a clause the Court may nonetheless conclude that the ACE Agreement supersedes the Equity Purchase Agreement based upon other relevant factors.

### 2. The Relevant Provisions of the Agreements Do Not Have the Same General Purpose

Turning to the second factor, the Court examines whether the provisions at issue cover "precisely the same subject matter" as required for the later to supersede the former under New York law. *A&E Television*, 2013 WL 1245453, at *11. Neither party approaches this factor at the appropriate level of generality. Ingersoll Rand defines the subject-matter of the ACE agreement as narrowly relating to the duties, obligations, and liabilities of the parties in relation to workers' compensation claims arising out of Dresser-Rand business prior to 2004, while Dresser-Rand focuses on whether the Equity Purchase Agreement and ACE Agreements, as a whole, have the same general purpose or address the same general rights. Dkt. No. 21, Reply at 3; Mot. at 10–11; Opp. at 12–14.

This disagreement elides an apparent ambiguity in the ACE Agreement: it is not clear from the face of the agreement whether it served to transfer all of the obligations listed in the recitals—that is, all "Workers' Compensation, Auto Liabilities, and General Liabilities (excluding Product Liabilities)" for Ingersoll Rand's Dresser-Rand business unit—from Ingersoll Rand to Dresser-Rand, as Ingersoll Rand suggests and the recitals to the Agreement provide, or whether it served only to transfer to Dresser-Rand all of Ingersoll Rand's duties, obligations, and liabilities *to ACE Insurance*, as Dresser-Rand contends and as one of the enumerated provisions of the Agreement provides. *Compare* Dkt. No. 14-4 at 1 *with id.* at 2. Notwithstanding this apparent tension, both parties contend that the ACE Agreement unambiguously supports their interpretation. *See* Opp. at 8 n.8.

Neither party engages with its opponent's interpretation. But "[t]he only task before the Court at the motion to dismiss stage is to determine whether there is at least sufficient ambiguity in the contract for [Dresser-Rand]'s claim to go forward." *Columbia Cas. Co. v. Neighborhood*

9

*Risk Mgmt. Corp.*, No. 14-CV-0048 (AJN), 2015 WL 3999192, at *9 (S.D.N.Y. June 29, 2015). The Court concludes that this burden is met. Dresser-Rand offers a plausible interpretation, based upon the contract's operative provisions, that the contract pertains to the parties' duties, obligations, and benefits with respect to insurance rather than indemnity. Although its interpretation provides no explanation for the first recital offered in the contract or for the economic logic behind Ingersoll Rand's decision to retain indemnification obligations while transferring insurance benefits to another party, the Court need not resolve these ambiguities at this stage, particularly because Ingersoll Rand relies only on a recital for its theory. The Second Circuit has held as a general matter that while a "'whereas' clause may be useful in interpreting an ambiguous operative clause in a contract, it cannot create any right beyond those arising from the operative terms of the document." *Aramony v. United Way of Am.*, 254 F.3d 403, 413 (2d Cir. 2001) (quoting *Abraham Zion Corp. v. Lebow*, 761 F.2d 93, 103 (2d Cir. 1985)).

Because it is at least ambiguous whether Dresser-Rand's interpretation of the ACE Agreement is correct, with Dresser-Rand's interpretation in mind, the Court turns to the question whether the provisions of the ACE Agreement have the same general purpose as the Equity Purchase Agreement.

Appropriately narrowed to evaluate the overlap of the relevant subsections or paragraphs of the two agreements, the question before the Court is whether the ACE Agreement's provision for Dresser-Rand's assumption of all duties, obligations, and liabilities to ACE Insurance existing, accruing, or arising before, on, or after the effective date of the Equity Purchase Agreement constitute the same subject matter as the indemnification provisions of the Equity Purchase Agreement. As defined in the ACE Agreement, the duties, obligations, and liabilities at issue are obligations relating to "Workers' Compensation, Auto Liabilities, and General

Liabilities (excluding Product Liabilities)." Dkt. No. 14-4 at 1. The Equity Purchase Agreement uses generally dissimilar terminology to describe the obligations at issue therein. It refers generally to losses, claims, liabilities, damages, fines, penalties, and costs arising out of breach of representation of warranty, breach or nonperformance of agreements contained in the Equity Purchase Agreement, Asbestos Liabilities, and Products Liabilities losses—without separately categorizing any such obligations as "Auto," "Workers Compensation," or "General Liabilities." Dkt. No. 14-3 § 8.1(a). The two points of overlap between the two documents' sets of terminology are the shared use of the term "liabilities" and the specific exclusion of "Product Liabilities (as defined in the Purchase Agreement)" from the later agreement.

Broadened to the full set of the duties, obligations, and liabilities Dresser-Rand assumed in the ACE Agreement, the ACE Agreement and the Equity Purchase Agreement could be interpreted to concern the same "broadly associated subject matter in common." *CreditSights, Inc.*, 2007 WL 943352, at *6–7. But the Court nonetheless cannot agree with Ingersoll Rand that the relevant portions of the Agreements unambiguously have the same general purpose when, as here, the agreements may concern "facially independent sets of obligations," *Long Side Ventures LLC v. Adarna Energy Corp.*, No. 12-CV-6836, 2014 WL 4746026, at *6 (S.D.N.Y. Sept. 24, 2014)—Ingersoll Rand's obligations to indemnify Dresser-Rand, on the one hand, and Dresser-Rand's assumption of Ingersoll Rand's obligations to ACE Insurance on the other.

Ingersoll Rand notes instead that "[u]nder New York law, 'all writings which form part of a single transaction and are designed to effectuate the same purpose [must] be read together, even though they were executed on different dates and were not all between the same parties." *Genger v. Genger*, 76 F. Supp. 3d 488, 496 (S.D.N.Y. 2015) (quoting *This Is Me, Inc. v. Taylor*, 157 F.3d 139, 143 (2d Cir. 1998)). For example, in *Genger*, the district court explained that a

11

subsequent agreement cross-referencing the prior agreement would have been "meaningless" in its absence and that one party would have been required to pay double the economic benefit if the later agreement did not supersede the former. *Id.* at 497. Applied to the present case, it is possible that the ACE Agreement and Equity Purchase Agreement warrant this treatment. But Ingersoll Rand has not identified how the Court could conclude this were the case based only on the amended complaint's well-pleaded factual allegations and on the face of each of the operative agreements.

As a final matter, nor is there any express indication that the parties intended the later agreement to supersede the former. *See Long Side Ventures*, 2014 WL 4746026, at *6. The ACE Agreement's reference that it is "pursuant to the Equity Purchase Agreement" establishes a clear link between the duties, obligations, and liabilities referred to in both documents; but it fails to establish that Dresser-Rand's assumption of Ingersoll Rand's obligations to ACE Insurance *also* served as its assumption of Ingersoll Rand's obligations to Dresser-Rand.

### 3. The ACE Agreement and Equity Purchase Agreement Can Exist in Tandem

The fact that the agreements at issue may exist in tandem as concerning the reallocation of insurance obligations and benefits, on the one hand, and indemnity and defense obligations, on the other, supports the Court's conclusion that the ACE Agreement does not supersede the Equity Purchase Agreement. *See CreditSights, Inc.*, 2007 WL 943352, at *9; *A&E Television Networks*, 2013 WL 1245453, at *11. It is true that Dresser-Rand's interpretation of the agreements as not superseding fails to give effect to all of their clauses. But standing alone—and without any briefing on this question—the Court cannot find this fact to constitute a sufficient basis to, as a matter of law, find that the ACE Agreement supersedes the Equity Purchase Agreement.

### 4. The Equity Purchase Agreement May Preclude Ingersoll Rand's Interpretation

The Equity Purchase Agreement's provision that the Agreement "may not be amended, modified or supplemented except upon the execution and delivery of a written agreement executed by the Buyers and the Sellers" confirms the Court's interpretation. Dkt. No. 14-3 § 9.3. The Equity Purchase Agreement further provides that the "Buyer" constitutes FRC Acquisitions LLC, or First Reserve, and the Sellers constitute Ingersoll-Rand Company, DR Holding Corp., Dresser-Rand Company. Dkt. 14-3 Ex. A.

Ingersoll Rand does not respond to this argument except to note that First Reserve's absence as a party from the ACE Agreement is "inconsequential" as to this dispute. This argument is nonresponsive to Dresser-Rand's contention that the ACE Agreement could not supersede the Equity Purchase Agreement by the latter's terms.

\* \* \*

For the foregoing reasons, the Court rejects Ingersoll Rand's argument that, as a matter of law, the ACE Agreement supersedes the Equity Purchase Agreement. Because Ingersoll Rand brings no further arguments that either Dresser-Rand's first cause of action for breach of contract or third cause of action for declaratory relief fails to state a claim, as to those claims Ingersoll Rand's motion is denied.

### C. Defendant's Motion to Dismiss Plaintiff's Anticipatory Breach of Contract Claim Is Denied

Anticipatory breach of contract occurs when "a wrongful repudiation of the contract by one party before the time of performance entitles the non-repudiating party to immediately claim damages for total breach, and [ ] relieve[s] the non-repudiating party of its obligations of future performance." *In re Food Mgmt. Grp.*, 425 F. App'x 54, 55 (2d Cir. 2011) (summary order) (quoting *Aetna Cas. and Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 587 (2d Cir. 2005).

"Repudiation occurs when a party manifests an intent not to perform, either by words or by deeds." *Aetna Cas. & Sur. Co.*, 404 F.3d at 587. Taken as true and construing the above-described contractual ambiguity in Dresser-Rand's favor, Dresser-Rand's allegations are sufficient to state a plausible claim for relief: by improperly tendering claims to Dresser-Rand notwithstanding the 1986 Organization Agreement and 2004 Equity Purchase Agreement, Ingersoll Rand plausibly repudiated its present and future indemnification obligations.

Ingersoll Rand's argument to the contrary is not to contest the legal sufficiency of Dresser-Rand's allegations, but to maintain that anticipatory breach of contract is not distinct from a breach of contract claim and that a claim for anticipatory breach of contract cannot be pursued simultaneously with a claim for breach of contract. In response, Dresser-Rand maintains that its anticipatory breach claim does not seek duplicative relief at all, but pursues relief in the form of *future* workers' compensation Asbestos Liability claims. And Ingersoll Rand responds that this theory of liability asks this Court to issue an "advisory opinion."

The Court need not resolve the second dispute, because it concludes that Dresser-Rand may proceed for a simpler reason: Ingersoll Rand provides no argument why Dresser-Rand could not pursue two separate theories of liability—repudiation and breach of contract—for Ingersoll Rand's purported breach. "At least when drawing all inferences in favor of the nonmoving party," Rule 8(d) "offers sufficient latitude to construe separate allegations in a complaint as alternative theories." *Adler v. Pataki*, 185 F.3d 35, 41 (2d Cir. 1999). That latitude is appropriately exercised here. To the extent Ingersoll Rand is correct that Dresser-Rand is impermissibly seeking double recovery, that concern is appropriately addressed when damages are being assessed, not when a plaintiff purports to assert alternative claims. *See Indu Craft, Inc.*

*v. Bank of Baroda*, 47 F.3d 490, 497 (2d Cir. 1995) ("A plaintiff seeking compensation for the same injury under different legal theories is of course only entitled to one recovery.).

The limited case law cited by Ingersoll Rand is not to the contrary. Although several courts have dismissed apparently overlapping anticipatory breach and breach of contract claims, *see, e.g., Verus Pharm., Inc. v. Astrazeneca AB*, No. 09-CV-5660 (BSJ), 2010 WL 3238965, at *12 (S.D.N.Y. Aug. 16, 2010), those courts cite no authority for their contention that any inconsistency between the theories is a flaw to be addressed at the pleading stage.

## IV. Conclusion

For the foregoing reasons, Ingersoll-Rand's motion to dismiss is DENIED. The Court will schedule a case management conference by separate order.

This resolves Dkt. No. 14.

SO ORDERED.

Dated: March 21, 2019
New York, New York

_____
ALISON J. NATHAN
United States District Judge