UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



Dresser-Rand Company, *et al.*,

Plaintiffs,

18-cv-3225 (AJN)

–v–

OPINION & ORDER

Ingersoll Rand Company Limited, *et al.*,

Defendants.

ALISON J. NATHAN, District Judge:

In an October 31, 2004 equity purchase agreement, Ingersoll Rand Company agreed to

defend, indemnify, and hold Dresser-Rand Company harmless for "Asbestos Liabilities" arising

prior to the agreement's closing date. Dresser brought this suit asserting that those liabilities

included asbestos-related workers' compensation claims. Ingersoll contends the agreement

covers only third-party product liability claims.

The Court does not reach the merits of these arguments because it lacks subject matter

jurisdiction. By stipulation of the parties, Dresser has dismissed with prejudice all claims related

to past workers' compensation claims. All it seeks now is a declaration pertaining to

hypothetical claims that might arise in the future. The Court lacks power under Article III of the

Constitution to issue an advisory opinion along these lines. It therefore grants Ingersoll's motion

for summary judgment, denies Dresser's motion for summary judgment, and dismisses the

declaratory judgment claim without prejudice.

I.      **Background**

Dresser Industries, Inc., and Ingersoll Rand Corporation formed Dresser-Rand Company

as a joint venture in 1986.  Defendants' Response to Plaintiffs' Rule 56.1 Statement ("First Plf.

56.1"), Dkt. No. 72, ¶ 1.  In 2004, FRC Acquisitions purchased Ingersoll Rand Corporation's

interest in Dresser-Rand Company.  *Id.* ¶ 8.  Ingersoll Rand Corporation agreed in the equity

purchase agreement "to indemnify, defend and hold the Buyers and their Affiliates . . . harmless

from and in respect of and and all losses, claims, liabilities, damages, fines, penalties, costs . . .

that they may incur arising out of, relating to, or due to any . . . Asbestos Liabilities . . . ."  *Id.*

¶ 10.  The agreement defined "Asbestos Liabilities" as "to the extent related to the period prior to

the Closing [October 31, 2004], (i) any claim . . . against Dresser-Rand Group. . . related to or

arising from the sale or use of any Product containing asbestos, or (ii) any claim or litigation by

any Person based on personal injury caused by the presence of asbestos containing material . . .

at any location formerly owned, leased, or operated by the Dresser-Rand Group . . . at any

location at which Dresser-Rand Group . . . has or is alleged to have disposed or arranged for the

disposal of any actual or alleged asbestos containing material."  Declaration of Jonathan M.

Pierce, Ex. B ("Equity Purchase Agreement"), Dkt. No. 69-1, at 75; *see* First Plf. 56.1 ¶ 11.

The parties dispute the bearing of two additional contracts on their liability for asbestos-

related workers' compensation claims.  Under the organization agreement for Dresser-Rand

Company, the company agreed to "assume liability for all workers' compensation benefits to

employees of the Acquired Businesses except for those workers' compensation benefits for

disabilities resulting from an accident or last exposure to occupational disease which occurred on

or prior to the Closing Date [December 31, 1986]."  First Plf. 56.1 ¶ 3. The parties also executed

an agreement regarding assumption of insurance obligations, effective October 29, 2004, which

transferred to Dresser-Rand Company certain insurance policy obligations, including for workers' compensation claims.  *Id.* ¶¶ 17–18, 20–21.

For the first time in May 2014, Dresser sent a letter to Ingersoll asserting that the equity purchase agreement required Ingersoll to defend, indemnify, and hold it harmless for asbestos-related workers' compensation claims.  *Id.* ¶¶ 25–26.  The letter demanded defense and indemnification for three workers' compensation claims related to occupational asbestos exposure by employees of Dresser or its affiliates between 1985 and 2001.  *Id.* ¶ 26; Defendants' Response to Plaintiffs' Second Rule 56.1 Statement ("Second Plf. 56.1"), Dkt. No. 81, ¶¶ 1–4. On January 24, 2017, Dresser sent a letter demanding defense and indemnification for anther asbestos-related workers' compensation claim raised by an employee who alleged exposure between 1987 and 1999.  First Plf. 56.1 ¶¶ 27–28; Second Plf. 56.1 ¶ 6.  In October 24, 2017, Ingersoll notified Dresser that it had reported another workers' compensation claim on Dresser's behalf, alleging asbestos exposure between 1987 and 1999.  Second Plf. 56.1 ¶ 8.  Dresser tendered the claim back to Ingersoll on March 21, 2018.  *Id.* ¶ 9.  Ingersoll refused to defend or indemnify Dresser for any of the claims.  First Plf. 56.1 ¶ 29; Second Plf. 56.1 ¶ 10.

Dresser has not tendered any asbestos-related workers' compensation claims to Ingersoll since.  Plaintiffs' Response to Defendants' Rule 56.1 Statement ("Def. 56.1"), Dkt. No. 79, ¶ 28; Declaration of Timothy M. Hurley, Ex. C ("Lang Aff."), Dkt. No. 74-3, ¶ 13.  Nor does the record reflect that any further asbestos-related workers' compensation claims have arisen.

Dresser and several of its affiliates sued Ingersoll and one of its affiliates, alleging that Ingersoll breached its obligation to defend, indemnify, and hold Dresser harmless for asbestos-related workers' compensation claims.  *See* First Amended Complaint ("FAC"), Dkt. No. 11, ¶ 1. Dresser asserted three claims for relief: breach of contract, anticipatory repudiation, and

declaratory judgment.  *Id.* ¶¶ 40–53.  Its declaratory judgment claim sought a declaration as to

three points. First, "that Ingersoll Rand breached its duty to defend, indemnify, and hold Dresser-

Rand harmless from all Asbestos liabilities, including those workers' compensation Asbestos

Liabilities, which Ingersoll Rand has repudiated."  *Id.* ¶ 51.  Second, "that Ingersoll Rand is

obligated to reimburse Dresser-Rand for all damages arising from Ingersoll Rand's breach."  *Id.*

¶ 52.  Third, "that Ingersoll Rand is obligated to defend, indemnify, and hold Dresser-Rand

harmless from all future Asbestos Liabilities—including workers' compensation Asbestos

Liabilities—where the alleged asbestos exposure occurred prior to October 31, 2004."  *Id.* ¶ 53.

On September 4, 2019, the Court entered a stipulation whereby Dresser voluntarily

dismissed its breach of contract and anticipatory repudiation claims with prejudice, leaving only

its claim for declaratory relief.  Dkt. No. 49.  Dresser acknowledges that "[t]here are no other

pending claims between the parties" related to past workers' compensation claims.  Second Plf.

Br., Dkt. No. 76, at 14.  However, it continues to seek declaratory relief "to avoid suffering the

same fate [of having to pay asbestos-related workers' compensation claims] in the future."  *Id.*

Dresser moved for summary judgment.  *See* Dkt. No. 67.  Ingersoll cross-moved for

summary judgment asserting, among other points, that the Court lacked subject matter

jurisdiction over Dresser's declaratory judgment claim.  *See* Dkt. No. 70.

## II.     Legal Standard

A court may grant summary judgment only "if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.

R. Civ. P. 56.  "An issue of fact is genuine if 'the evidence is such that a reasonable jury could

return a verdict for the nonmoving party.'  A fact is material if it 'might affect the outcome of the

suit under the governing law.'"  *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008)

(internal citations omitted) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

"In applying this standard, [courts] 'resolve all ambiguities, and credit all factual inferences that

could rationally be drawn, in favor of the party opposing summary judgment.'" *Brown v.*

*Henderson*, 257 F.3d 246, 251 (2d Cir. 2001) (quoting *Cifra v. General Electric Co.*, 252 F.3d

205, 216 (2d Cir.2001)).

"Federal courts 'are courts of limited jurisdiction whose power is limited strictly.'"

*Garanti Finansal Kiralama A.S. v. Aqua Marine & Trading Inc.*, 697 F.3d 59, 64 (2d Cir. 2012)

(quoting *Ahmed v. Holder*, 624 F.3d 150, 154 (2d Cir. 2010).  "A party seeking a declaratory

judgment bears the burden of proving that the district court has jurisdiction."  *E.R. Squibb &*

*Sons, Inc. v. Lloyd's & Companies*, 241 F.3d 154, 177 (2d Cir. 2001) (citing *Cardinal Chem. Co.*

*v. Morton Int'l, Inc.*, 508 U.S. 83, 95 (1993)).  A district court must dismiss an action at any time

if it determines it lacks subject matter jurisdiction.  Fed. R. Civ. P. § 12(h)(3); *see Sebelius v.*

*Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 153 (2013).

## III.    Discussion

Courts lack the power to grant declaratory relief unless an actual controversy exists.

*Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 272 (1941) (citing U.S. Const. art.

III)).  "The controversy must be 'real and substantial . . . admitting of specific relief through a

decree of a conclusive character, as distinguished from an opinion advising what the law would

be upon a hypothetical state of facts.'"  *Olin Corp. v. Consol. Aluminum Corp.*, 5 F.3d 10, 17 (2d

Cir. 1993) (alteration in original) (*quoting Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240–41

(1937)).  "Basically, the question in each case is whether the facts alleged, under all the

circumstances, show that there is a substantial controversy, between parties having adverse legal

interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."

*Maryland Cas.*, 312 U.S. at 273.

"The Declaratory Judgment Act does not expand the subject matter jurisdiction of the

federal courts."  *Nike, Inc. v. Already, LLC*, 663 F.3d 89, 95 (2d Cir. 2011); *see Pub. Serv.*

*Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 242 (1952) (citing *Ashwander v. Tenessee Valley*

*Authority*, 297 U.S. 288, 325 (1936)).  That is, a district court must first assure itself that a suit

presents a case or controversy within the meaning of Article III of the Constitution.  Once it has

done so, the Second Circuit has established a prudential test under which a district court "*may*"

exercise jurisdiction over a declaratory judgment action that otherwise lies within the judicial

power.  *See Dow Jones & Co. v. Harrods Ltd.*, 346 F.3d 357, 359 (2d Cir. 2003) (quoting 28

U.S.C. § 2201(a)).  *But cf. Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118,

127 & n.3 (2014) (disapproving prudential tests for the exercise of jurisdiction).  If a claim for

declaratory judgment does not present a justiciable controversy, the district court does not reach

this second, discretionary step.

Core to the case-or-controversy requirement of Article III is that federal courts adjudicate

present disputes; they do not issue advisory opinions on cases that may or may not arise in the

future.  *Golden v. Zwickler*, 394 U.S. 103, 108 (1969); *Penguin Books USA Inc. v. Walsh*, 929

F.2d 69, 72 (2d Cir. 1991).  When a plaintiff invokes federal jurisdiction based on the prospect of

future litigation, the court must assess the imminence and likelihood that such litigation will

actually occur.  *See Penguin Books*, 929 F.2d at 72–73; *see also Associated Indem. Corp. v.*

*Fairchild Indus., Inc.*, 961 F.2d 32, 35 (2d Cir. 1992) ("That the liability may be contingent does

not necessarily defeat jurisdiction of a declaratory judgment action.  Rather, courts should focus

on 'the practical likelihood that the contingencies will occur . . . .'" (alteration in original)

6

(quoting 10A Wright, Miller & Kane, *Federal Practice and Procedure*, § 2757, at 587 (2d ed. 1983))).

In the insurance context, federal courts routinely adjudicate declaratory judgment actions where an insurer seeks to clarify its rights with respect to a pending or anticipated claim. *See id.* In these cases, the events giving rise to the claim have already occurred, whether or not litigation has yet commenced. *See, e.g.*, *Maryland Cas.*, 312 U.S. at 271–72. Still, courts have distinguished between claims for defense and claims for indemnification, generally holding that claims for indemnification are unripe until the underlying liability has been established. *See Solow Bldg. Co., LLC v. ATC Assocs., Inc.*, 388 F. Supp. 2d 136, 139 (E.D.N.Y. 2005) (collecting cases). Even suits asserting an obligation to defend fail to present an actual controversy when they concern only hypothetical, future claims. *See, e.g.*, *FSP, Inc. v. Societe Generale*, No. 02-cv-4786 (GBD), 2003 WL 124515, at *4 (S.D.N.Y. Jan. 14, 2003), *aff'd*, 350 F.3d 27 (2d Cir. 2003).

Dresser cites no authority allowing a plaintiff to seek a declaration as to its right to indemnification for future claims that have yet to arise. Such cases are exceedingly rare. The Court is aware of only one published circuit court decision in which a court has allowed a plaintiff to seek a declaration as to indemnification for a broad class of claims not before the court. In *Keene Corp. v. Insurance Company of North America*, 667 F.2d 1034, 1040 (D.C. Cir. 1981), the D.C. Circuit held that an insulation manufacturer could seek a declaration as to whether its insurance policies covered claims where asbestos exposure occurred during the covered term but disease manifested later. However, *Keene* did not concern only future claims. Keene had been named as a defendant in over 6,000 asbestos-related lawsuits, many of which remained pending. *Id.* at 1038–40. The suit therefore concerned Keene's "past, present, and

7

future" rights.  *Id.* at 1040.  Moreover, one of the insurance policies covered a period running until only a year before the court's decision.  *Id.* at 1039.  It was undisputed that Keene would continue to be subject asbestos claims in the future arising from exposure during the coverage period.  *See id.* at 1040.

Unlike *Keene*, this case does not involve other pending claims or claims that are certain to arise in the future.  Dresser has voluntarily dismissed, with prejudice, its claims related to past asbestos workers' compensation claims.  Dkt. No. 49.  That is, those claims are now the subject of a final adjudication on the merits.  Dresser acknowledges that only liability for *potential future claims* is now at issue.  *See* Second Plf. Br. at 14; *see also* Declaration of Timothy M. Hurley, Ex. A ("Reeb Depo."), Dkt. No. 74-1, at 133:20–136:13 (objecting that deposition questions regarding past workers' compensation claims are off-topic because those claims "are no longer at issue in this lawsuit").  Absent a showing that future claims are imminent or likely, the mere possibility that such claims may arise in the future is not enough to support jurisdiction.  *See Penguin Books*, 929 F.2d at 72–73.

The only fact Dresser points to as evidence that future claims may arise is the handful of past claims no longer at issue.  However, Dresser has identified no claims that have arisen in the past three years.  *See* Def. 56.1 ¶ 28; First Plf. 56.1 ¶¶ 25–28; Second Plf. 56.1 ¶¶ 8–10.  Three of the five claims it identified arose in 2010 or earlier, even though it did not tender them to Ingersoll until 2014.  *See* Lang Aff. ¶¶ 12.  Meanwhile, the period of potential exposure covered by the equity purchase agreement is now more than fifteen years in the past.  *See* First Plf. 56.1 ¶ 11.  If further claims do arise, they may present individualized issues related to the timing or location of asbestos exposure.  *See* Second Def. Br., Dkt. No. 80, at 7.  On these facts, "Plaintiff's expectation of future actions is speculative, and does not give rise to an actual

controversy." *FSP*, 2003 WL 124515, at \*5.  The constitutional limits of federal-court

jurisdiction do not permit the Court to opine in the abstract on coverage disputes that might never

arise.

## Conclusion

The Court lacks the power to issue the advisory opinion Dresser seeks, and so must

dismiss the case for lack of jurisdiction.  Ingersoll's motion for summary judgment (Dkt. No. 70)

is GRANTED.  Dresser's motion for summary judgment (Dkt. No. 67) is DENIED.  Dresser's

claim for declaratory judgment is dismissed without prejudice.  The Clerk of Court is

respectfully directed to close the case.

SO ORDERED.

Dated: November 20, 2020
       New York, New York                    _____
                                                        ALISON J. NATHAN
                                                     United States District Judge